UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES E. MCCOLLUM, JR.,<br>7309 Baltimore Ave., #117<br>College Park, MD 20740<br><br>    Plaintiff,<br><br>    v.<br><br>DISTRICT OF COLUMBIA,<br>825 North Capitol Street, N.E.<br>Washington, D.C. 20002-4232,<br><br>    and,<br><br>CLINTON L. EVANS, JR.,<br>In his official capacity as<br>Hearing Officer for District of<br>Columbia Public Schools,<br><br>    Defendants.<br><br>    Serve:<br><br>    Executive Office of the Mayor<br>    1350 Pennsylvania Ave., N.W.<br>    5th Floor<br>    Washington, D.C. 20004<br><br>    Office of the Attorney General<br>    1350 Pennsylvania Ave., N.W.<br>    Suite 409<br>    Washington, D.C. 20004, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
APPLICATION FOR TEMPORARY RESTRAINING ORDER, DECLARATORY AND
PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

      Plaintiff, James E. McCollum, Jr., pursuant to Rule 65 and Local Rule 65.1,

hereby moves this Court for a temporary restraining order, for declaratory relief and for

preliminary and permanent injunctive relief against the District of Columbia and against Clinton

L. Evans, Jr., in his official capacity. The reasons why this relief should be granted are set forth below.

**Factual Background**

James E. McCollum, Jr., is an attorney who is licensed in the District of Columbia and who represents Neil Harps in an adverse action matter in front of the District of Columbia Public Schools' ("DCPS") administrative tribunal. Mr. Harps was employed for the DCPS and was terminated from his position. Robert Stewart was also by DCPS, and was also terminated from his position. The grounds for the termination were allegedly for entering into an unauthorized contract with a supplier. Both Mr. Harps and Mr. Stewart vigorously contest the grounds for termination and the allegations of any impropriety. Mr. Harps retained the firm of McCollum & Associates, LLC, as counsel in the matter. An appeal was taken to challenge Mr. Harps' termination under administrative procedure authorized by the District of Columbia Municipal Regulations at 5 DCMR, Chapter 14. *See* Exhibit 1. Mr. McCollum does not represent Mr. Stewart, and Mr. Stewart's hearing is a separate proceeding from Mr. Harps'.

Administrative hearings under Title 5 DCMR Chapter 14 are presumed to be closed to the public unless the employee requests that the hearing be open. 5 DCMR § 1408.1. An open hearing may be closed at any time upon request *by the employee.* 5 DCMR § 1408.2. (Emphasis added). Mr. Stewart requested that his hearing be open.

Clinton L. Evans, Jr., is an attorney employed by DCPS to function as a Hearing Officer for appeals of adverse employment actions and in that capacity is functioning as an agent and official of DCPS.

On April 18, 2005, Mr. McCollum attended a hearing in Mr. Stewart's case. The

matter was not concluded, and a continuation date has been set for June 28, 2005, which is expected to last several days. Mr. McCollum did not participate in the April 18, 2005, hearing[1]. DCPS objected to Mr. McCollum's presence at the Stewart hearing because of Mr. McCollum's representation of Mr. Harps. The Hearing Officer permitted Mr. McCollum to stay in the April 18, 2005, proceeding as a member of the public.

Mr. Stewart had hired a court reporting service to create a transcript of the proceedings which he is authorized to do by D.C. Municipal Regulation 5 DCMR §1407.9. Mr. McCollum obtained a copy of the transcript and quoted portions of the sworn testimony from the Stewart hearing in a motion for reconsideration filed in the Harps' matter.

In an undated order, the Hearing Officer ruled that Mr. McCollum's use of testimony from the Stewart hearing and obtained from the court reporting service constituted "an abandonment of [Mr. McCollum's] status as a member of the general public, and as Mr. McCollum's interjection into Stewart as counsel for Harps. The Hearing Officer hereby excludes Mr. McCollum from Stewart under provisions of 5 DCMR 1409.6" (permitting the exclusion of the public when the Hearing Officer finds the member of the public's conduct to have been disruptive). *See* Exhibit 1.

## Discussion

The Hearing Officer's exclusion of Mr. McCollum from an open and public proceeding simply because he is counsel in a separate matter violates the First Amendment to the United States Constitution as applied to the District of Columbia through the Fifth Amendment. The hearing officer erroneously granted DCPS's motion to exclude an individual member of the

---

[1] A second hearing was held in Stewart in which Mr. McCollum was present and was invited by the Hearing Officer to answer certain questions. No testimony was taken at that hearing and it is not in issue here.

public from an open proceeding on the ground that Mr. McCollum obtained a public transcript and cited portions of the transcript in a related but separate case.

Based upon Mr. McCollum's perfectly legal action and citing no authority whatsoever, the hearing officer erroneously concluded that Mr. McCollum lost his status as a member of the public and "participated" in the April 15, 2005, hearing. The hearing officer concluded that 5 DCMR §1408.6 authorized Mr. McCollum's exclusion from a public hearing in violation of his First Amendment rights and without justification. Mr. McCollum did not participate in the April 18, 2005, hearing; rather, he sat in the audience and observed the proceedings.

The Hearing Officer's factual findings were arbitrary and capricious. There simply was no disruptive conduct by Mr. McCollum on which to base an exclusion order. 5 DCMR §1408.6 states "any person may be excluded from the hearing by the hearing officer for conduct that interferes with the hearing process." *See* Exhibit 2. The hearing officer made no factual findings at all as to how Mr. McCollum's presence interfered with the hearing process other than to cite Mr. McCollum's later use of a transcript of a public proceeding in a completely separate hearing. The hearing officer stated: "The action of Mr. McCollum, in obtaining and using said testimony, [constitutes] an abandonment of his status as a member of the general public, and as Mr. McCollum's interjection into Stewart as counsel for Harps." *See* Exhibit 1 at 2. The hearing officer does not explain how obtaining a transcript "interjected" Mr. McCollum into the proceeding and constitutes an abuse of his discretion and a violation of Mr. McCollum's constitutional rights to access to courts and freedom of speech.

It is a longstanding principle of American law that judicial proceedings and

records are presumptively open. 75 Am. Jur. 2d Trial §33. This principle has two main components – the right to attend proceedings and the right to access records of proceedings for the purposes of inspection and copying. *Id.* at §10. These principles were set forth in *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555 (1980), *Globe Newspaper Co. v. Superior Court for County of Norfolk,* 457 U.S. 596 (1982), and in *Nixon v. Warner Communications, Inc.,* 435 U.S. 589 (1978), in which the Supreme Court held that both the public and the press have a constitutional right, guaranteed under the First and Fourteenth Amendments to attend proceedings and to inspect and copy judicial records. These rights enhance the public's understanding and promote public confidence in the judicial system. *Bigelow v. District of Columbia,* 122 F.R.D. 111, (D.C. 1988).

In *Globe,* the Court set forth a balancing test to assist in determining whether it is appropriate to close a public proceeding: where access is sought to be denied, the state must have a compelling governmental interest and the limitations must be narrowly tailored to serve that interest to justify secret proceedings. Further, the public has a right to access and attend civil proceedings as well. *Littlejohn v. BIC Corp*. 851 F.2d 673 (3rd Cir. 1988). Though in civil cases, the right is not absolute, there is a strong presumption that proceedings will be conducted openly unless closure is essential in the interests of justice. *In re Application of National Broadcasting Co. (United States v. Jenrette),* 653 F.2d 609, 612-13 (D.C.Cir. 1981). The burden is upon the moving party to demonstrate that closure is essential in the interests of justice. Here, the court made no factual findings at all with respect to the reasons supporting the conclusion that Mr. McCollum's use of a public transcript somehow interjected him into the prior hearing as a participant.

Additionally, transcripts from civil proceedings are subject to the presumption of public access. *Littlejohn,* 851 F.2d 673 (3rd Cir. 1988)(emphasizing that the newspaper had the

right of access to items in the judicial record such as the deposition testimony read into evidence at trial, other exhibits or portions made part of the official transcript); *Zenith Radio Corp. v. Matsushita Electric Industrial Co.,* 529 F.Supp. 866 (E.D. Pa. 1981)(noting that the reporter's original notes or other original records and the copy of the transcript are maintained by the clerk in an office open to the public during regular business hours).

In *Publicker Industries, Inc. v. Cohen,* 733 F.2d 1059 (3rd Cir. 1984), the court held that to limit the public's access to civil trials there must be a showing that the denial serves an important governmental interest. The party seeking the closure of a hearing or the sealing of a transcript bears the burden of showing that the material is the kind of information that courts will protect and that there is good cause for the order to issue. The court held that good cause is demonstrated by showing that disclosure will work a clearly defined and serious injury to the party seeking closure, and the injury must be shown with specificity. Significantly, the court requires a trial court which closes a proceeding to both articulate the countervailing interest it seeks to protect and make findings specific enough that a reviewing court can determine whether the closure order was properly entered. Additionally, the record before the trial court must demonstrate an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.

Here, there is no allegation that the information to be shielded from Mr. McCollum at Mr. Stewart's continued hearing is proprietary in nature, contains confidential or competitive details, or that disclosure would be scandalous or embarrassing of any such degree so as to necessitate the closure of the hearing. No clearly defined harm or serious injury has been alluded to at all. In fact, the only reason, seemingly, that DCPS sought to exclude Mr.

McCollum from Mr. Stewart's public hearing is the fear that Mr. Harps might gain some tactical advantage from attending Mr. Stewart's hearing. This simply cannot constitute an overriding interest justifying the closure of proceedings for which the party chose not to close. In addition, the reasons provided by the hearing officer for excluding Mr. McCollum (note that the Hearing Officer did not close the proceedings, he merely excluded one citizen from an otherwise public forum) are also insufficient to justify Mr. McCollum's exclusion. The hearing officer based his decision to exclude Mr. McCollum on a section of the regulations that empowers the hearing officer to exclude a member of the public if that person disrupts the hearing.

It is undisputed that Mr. McCollum did nothing disruptive during the April 18, 2005 hearing. It was Mr. McCollum's later use the public transcript that rankled the hearing officer and triggered the finding that Mr. McCollum had disrupted the proceedings by "inserting himself" into Mr. Stewart's proceeding. The logic simply does not follow as there is no question that the transcript in this matter was public and that there exists a general right to inspect and copy public records. *Nixon v. Warner Communications, Inc.,* 435 U.S. 589 (1978).

In *Newman v. Graddick,* 696 F.2d 796 (11th Cir. 1983), the District Court prohibited members of the press from attending certain hearings regarding prisoner litigation. In reversing the District Court, it was held that prohibiting certain members of the public – the press – from ongoing litigation can only be countenanced upon a record clearly demonstrating a compelling governmental interest and that exclusion is the most appropriate method of satisfying that interest. In *Newman,* the trial court's reasons for excluding members of the press from prisoner administrative hearings were singularly unsupported by anything other than conjecture that violence might be more likely if the proceedings were publicized. Like the court in

*Newman,* the hearing officer's order here lacked solid factual findings demonstrating clear and supportable reasons why Mr. McCollum's presence at the public hearing would be disruptive. In as much as this is ongoing litigation, the hearing officer should be enjoined from prohibiting Mr. McCollum from attending the Stewart proceedings.

Finally, in *Beauchamp v. Cahill,* 180 S.W.2d 423 (Ky 1944), it was an abuse of discretion for the trial court to exclude from a criminal trial an attorney who represented a client facing a similar charge to the one at issue in the litigation. The attorney, an officer of the court, was duly licensed and had both a personal and a professional interest in the matter. The attorney in *Beauchamp* was in the same position as Mr. McCollum finds himself in here. Mr. Stewart's hearing is a public proceeding. Mr. McCollum has a professional interest in tracking the proceedings of Mr. Stewart in much the same manner that an attorney representing a severed co-defendant would have in a criminal case. To hold that an attorney may not attend a public proceeding because his client might be called to testify in that case is an extraordinary position which requires an immediate federal equitable remedy.

                                                     Respectfully submitted,

                                         _____/s/_____
                                         Carla M. Mathers
                                         Bar No. 445064

                                         7309 Baltimore Ave., Suite 117
                                         P.O. Box 1717
                                         College Park, MD 20740-2736
                                         301-864-6070 Ext. 201

DATED this __28th____ day of June, 2005.